IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | |
| Plaintiff, | Case No.: 3:21-cv-2599 |
| v. | Judge Karen Gren Scholer |
| COQUEST INC., BUTTONWOOD LLC, WEVA PROPERTIES LTD., DENNIS WEINMANN, and JOHN VASSALLO, | |
| Defendants. | |

**CONSENT ORDER FOR PERMANENT INJUNCTION, CIVIL MONETARY PENALTY AND OTHER EQUITABLE RELIEF AGAINST COQUEST INC., BUTTONWOOD LLC, WEVA PROPERTIES LTD., DENNIS WEINMANN, AND JOHN VASSALLO** ✳

## I.   INTRODUCTION

On October 20, 2021, Plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC") filed a Complaint against Defendants Coquest Inc., Buttonwood LLC, Weva Properties Ltd., Dennis Weinmann, and John Vassallo ("Defendants") seeking injunctive and other equitable relief, as well as the imposition of civil penalties, for violations of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1–26, and the Commission's Regulations ("Regulations") promulgated thereunder, 17 C.F.R. pts. 1–190 (2021).

## II.   CONSENTS AND AGREEMENTS

To effect settlement of all charges alleged in the Complaint against Defendants without a trial on the merits or any further judicial proceedings, Defendants:

✳ *As edited by the Court (see paragraphs 8 & 66)*
*KGS*

1. Consent to the entry of this Consent Order for Permanent Injunction, Civil Monetary Penalty, and Other Equitable Relief Against Defendants Coquest Inc., Buttonwood LLC, Weva Properties Ltd., Dennis Weinmann, and John Vassallo ("Consent Order").

2. Affirm that they read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the CFTC or any member, officer, agent, or representative thereof, or by any other person, to induce consent to this Consent Order.

3. Acknowledge service of the summons and Complaint.

4. Admit the jurisdiction of this Court over them and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1.

5. Admit the jurisdiction of the CFTC over the conduct and transactions at issue in this action pursuant to the Act.

6. Admit that venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e).

7. Waive:

(a)     Any and all claims that they may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412, and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. pt. 148 (2021), relating to, or arising from, this action;

(b)     Any and all claims that they may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, tit. II, §§ 201–253, 110 Stat. 847, 857–74 (codified as amended at 28 U.S.C. § 2412 and in scattered sections of 5 U.S.C. and 15 U.S.C.), relating to, or arising from, this action;

(c)     Any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

(d)     Any and all rights of appeal from this action.

8. Consent to the ~~continued~~ jurisdiction of this Court over them for the purpose of implementing and enforcing the terms and conditions of this Consent Order and for any other purpose relevant to this action, even if Defendants now or in the future reside outside the jurisdiction of this Court.

9. Agree that they will not oppose enforcement of this Consent Order on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and hereby waives any objection based thereon.

10.     Agree that neither they nor any of their agents or employees under their authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or the Findings of Fact or Conclusions of Law in this Consent Order, or creating or tending to create the impression that the Complaint and/or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect their: (a) testimonial obligations, or (b) right to take legal positions in other proceedings to which the CFTC is not a party.  Defendants shall comply with this agreement, and shall undertake all steps necessary to ensure that all of their agents and/or employees under their authority or control understand and comply with this agreement.

11.     Consent to the entry of this Consent Order without admitting or denying the allegations of the Complaint or any findings or conclusions in this Consent Order, except as to jurisdiction and venue, which they admit.

12.     Consent to the use of the findings and conclusions in this Consent Order in this proceeding and in any other proceeding brought by the Commission or to which the Commission is a party or claimant, and agree that they shall be taken as true and correct and be given preclusive effect therein, without further proof.

13.     Do not consent, however, to the use of this Consent Order, or the findings and conclusions herein, as the sole basis for any other proceeding brought by the Commission or to which the Commission is a party, other than a: proceeding in bankruptcy, or receivership; or proceeding to enforce the terms of this Order.

14.     Agree that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against them in any other proceeding.

## III.    FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay.  The Court therefore directs the entry of the following Findings of Fact, Conclusions of Law, permanent injunction and equitable relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, as set forth herein.

**THE PARTIES AGREE AND THE COURT HEREBY FINDS:**

**A.     Findings of Fact**

**The Parties to this Consent Order**

15.     Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act and the Regulations.

16.     Defendant Coquest Inc. ("Coquest") is a Texas corporation located in Dallas, Texas.  Coquest has been registered with the Commission as an introducing broker ("IB") since 1990.  Coquest has also been registered with the Commission as a commodity trading advisor ("CTA") from 1990-2012 and from 2020 to the present, and as a commodity pool operator from 1990-1994 and from 2010 to the present.  Coquest executes block trades in futures and options on

4

behalf of brokerage customers, and Coquest's individual brokers are registered with the Commission as APs of Coquest.

17.     Defendant Buttonwood LLC ("Buttonwood") is a Texas limited liability company located in Dallas, Texas.  Buttonwood has been registered with the Commission as a CTA since 2014. Buttonwood trades commodity futures and options out of a single account, called the Galaxy Plus Fund, which solicits funds from customers.

18.     Defendant Weva Properties Ltd. ("Weva") is a Texas company located in Dallas, Texas.  Weva is not registered with the Commission.  Weva trades commodity futures and options in a proprietary account on behalf of its owners, Dennis Weinmann and John Vassallo.

19.     Defendant Dennis Weinmann ("Weinmann") is a 50% owner of Coquest, where he serves as vice president and acts as an AP and block trade broker.  Weinmann is also a 50% owner of Buttonwood and Weva, where he works as a commodities trader.  Weinmann has been listed with the National Futures Association ("NFA") as a principal and registered with the Commission as an AP of Coquest since 1990.  Weinmann has been listed as a principal with NFA and registered with the Commission as an AP of Buttonwood since 2014.

20.     Defendant John Vassallo ("Vassallo") is a 50% owner of Coquest, where he serves as, among other things, president and compliance officer, and acts as an AP and block trade broker.  Vassallo is also a 50% owner of Buttonwood and Weva.  Vassallo has been listed as a principal with NFA and registered with the Commission as an AP of Coquest since 1990.  Vassallo has been listed as a principal with NFA and registered with the Commission as an AP of Buttonwood since 2014.

**Coquest's Block Trade Brokerage Business**

21.     Coquest facilitates block trades for its brokerage customers in futures contracts and options, including natural gas futures listed on CME and ICE.  Block trades are privately negotiated transactions involving exchange-listed futures contracts that meet the minimum quantity threshold determined by the exchange.  Block trades are privately negotiated transactions which are executed by agreement apart and away from the open outcry or electronic markets, and then reported as executed on an exchange's trading facility, as permitted under exchange rules.

22.     Coquest is a "voice broker" that solicits and receives requests from its customers to enter into block trades via phone, voice box, or instant message ("IM").  Coquest then locates potential counterparties for the requested block trades either from among Coquest's other customers or the customers of another voice broker.

23.     Customers provided Coquest and its brokers with access to such confidential information with the understanding and the expectation that the information would be used to arrange block trades with third parties, and would not otherwise be used to the customers' disadvantage.

24.     When locating potential counterparties for requested block trades, Coquest brokers necessarily disclose to other market participants the existence of a potential buyer or seller of a particular contract, as well as price and quantity information, but they do not disclose the identity of the customer making the block trade request.  Coquest is generally, but not always, paid a commission for each block trade it executes on behalf of its customers.

25.     Coquest and its customers understood and agreed that Coquest acted as an agent of its customers with authority to bind them in transactions involving natural gas futures and other products, including block trades in natural gas futures contracts listed on CME and ICE.

**Weinmann Misappropriated Confidential Customer Information and Unlawfully Took the Other Side of His Customers' Block Trades**

26.    Between May 28, 2015, and September 25, 2019, Weinmann, acting as an AP of Coquest, received block trade requests from Coquest's customers for energy futures contracts.

27.    During this period, Weinmann also traded in the same futures and options contracts for which he was brokering block trades for Coquest's customers through two accounts he controlled. The first account is managed by Buttonwood, an entity for which Weinmann is a 50% owner and the sole trader. Buttonwood trades a single account, called the Galaxy Plus Fund, on behalf of investors. Buttonwood keeps a portion of the trading profits from the Galaxy Plus Fund as an incentive fee, and also charges a management fee to investors.

28.    The second account is owned by Weva, another entity for which Weinmann is a 50% owner and the sole trader. The Weva account is a proprietary trading account, with profits flowing to Weinmann and Vassallo.

29.    On more than two thousand instances between May 28, 2015 and September 25, 2019, Weinmann received requests from Coquest customers for block trades in various futures or options contracts. Instead of locating a counterparty from among Coquest's other customers or the customers of another voice broker, Weinmann executed block trades on behalf of Buttonwood or Weva as a counterparty opposite Coquest customers without their customers' prior consent, knowing that the Buttonwood and Weva accounts were taking the other side of the customers' block trades.

30.    Weinmann did not disclose to Coquest's customers, either at the time the block trades were executed or at any other time, that he was taking the other side of their requested block trades in accounts that he controlled. In fact, Weinmann sometimes made statements to customers

indicating that there was some other third party on the other side of the requested block trade who was negotiating with the brokerage customer.

31.     By executing block trades between the Buttonwood and Weva accounts and Coquest's customers in this manner, Weinmann misappropriated material, nonpublic information from Coquest customers by trading on the customers' block trade orders in violation of his duties to the customers.  Weinmann also created the false impression that he was acting as a broker, not a potential block trade counterparty, and led Coquest's customers to think that the bids and offers he provided reflected bids or offers available from other market participants, when in fact those bids and offers reflected prices at which Weinmann was willing to execute a block trade in the Buttonwood or Weva account.  Weinmann sometimes reinforced this false impression by charging his customers brokerage commissions on the block trades between his customers and the Buttonwood or Weva account in the same way as he did for trades he brokered between his customers and other market participants.

32.     Through this scheme, Weinmann was able to obtain for the Buttonwood and Weva accounts block trade prices that would not have been available if Weinmann were openly participating as a trader in the block trade market.  Weinmann realized trading profits for the Buttonwood and Weva accounts by personally offsetting the block trade positions he established with Coquest's customers with either other block trades or trades executed on CME's or ICE's electronic trading platform.

33.     Defendants represent that prior to the enactment of the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111–203, § 929P(b), 124 Stat. 1376, 1864–65 (2010), Defendants routinely disclosed, as was required by CFTC regulations,  when one of their entities took the other side of a customer's block trade.  The Defendants represent, however, that

8

after the Dodd-Frank Act amended the CEA, the Defendants stopped disclosing when Defendants were taking the opposite side of customer orders until they were informed in late 2019 that brokers were still required to make such disclosures under Commission regulations. The Defendants thereafter represent that they have consistently disclosed to customers when they were acting as counterparties to their customers' trades.

### Coquest, Buttonwood, Vassallo, and Weinmann Failed to Supervise

34.     As a registered IB, Coquest was obligated under Regulation 166.3, 17 C.F.R. § 166.3 (2021), to diligently supervise the handling of all commodity interest accounts introduced by Coquest and all other activities of its partners, officers, employees, and agents.

35.     As associated persons ("APs") of Coquest with supervisory duties, Vassallo and Weinmann also had a duty to diligently supervise. From at least May 28, 2015 through September 25, 2019, Coquest, Vassallo, and Weinmann failed to ensure that Coquest had an adequate system of oversight in place to detect or prevent its brokers or other affiliated persons from either taking the other side of customer block trades in violation of Regulation 155.4, 17 C.F.R. §155.4 (2021), or misappropriating material, nonpublic information from Coquest's customers.

36.     For example, Coquest did not have written policies in place setting forth Commission and exchange rules regarding the duties of a broker and did not have any rules in place regarding trading against brokerage customers. Coquest also did not have any procedures in place to monitor or review the activities of Coquest's brokers.

37.     Vassallo, Coquest's president, principal, and compliance officer, was generally aware that Weinmann was trading for the Buttonwood and Weva accounts while also brokering block trades for Coquest's customers. But Vassallo did not supervise Weinmann's brokerage or

9

trading activity or take any other steps to determine whether Weinmann was trading in the Buttonwood and Weva accounts in violation of his duties to Coquest's customers.

38.     As a registered CTA, Buttonwood was obligated under 17 C.F.R. § 166.3 to diligently supervise the handling of all commodity interest accounts introduced by Coquest and all other activities of its partners, officers, employees, and agents.

39.     As associated persons ("APs") of Buttonwood with supervisory duties, Vassallo and Weinmann also had a duty to diligently supervise.  From at least May 28, 2015 through September 25, 2019, Buttonwood, Vassallo, and Weinmann failed to ensure that Buttonwood had an adequate system of oversight in place to detect or prevent Weinmann from trading on material, nonpublic information that he knew had been misappropriated from Coquest's customers.

40.     For example, Buttonwood did not have written policies in place setting forth Commission and exchange rules regarding trading on material, nonpublic information and also did not have any procedures in place to monitor or review the activities of Buttonwood's traders.

**B.     Conclusions of Law**

**Jurisdiction and Venue**

41.     This Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1331 (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress).  Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a), provides that the CFTC may bring actions for injunctive relief or to enforce compliance with the Act or any rule, regulation, or order thereunder in the proper district court of the United States whenever it shall appear to the CFTC that any person has engaged, is engaging, or is about to

engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

42.     Venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e), because Defendants reside in this jurisdiction and the acts and practices in violation of the Act occurred within this District.

**Fraud by Misappropriation of Material, Nonpublic Information and Failure to Supervise**

43.     By the conduct described in paragraphs 1 through 41 above, Defendants Weinmann, and Vassallo knowingly took the other side of customer orders revealed to Coquest or any of its affiliated persons by reason of the customers' relationship with Coquest without the customers' prior consent in violation of Regulation 155.4(b)(2)(i), 17 C.F.R. § 155.4(b)(2)(i) (2021).

44.     By the conduct described in paragraphs 1 through 41 above, Defendant Weinmann cheated and defrauded, or attempted to cheat and defraud, and willfully deceived, or attempted to deceive, Coquest's customers by, in connection with contracts for future delivery and options on futures on or subject to the rules of any registered entity: (i) intentionally or recklessly trading on the basis of material, nonpublic information in breach of a pre-existing duty owed to Coquest customers; (ii) intentionally or recklessly trading against Coquest customers at prices less favorable than he knew or should have known to be available in the market in order to benefit Buttonwood and Weva at the Coquest customers' expense; (iii) intentionally or recklessly deceiving or attempting to deceive customers into believing that he was reporting bids and offers made by some third party trading counterparty when in fact Weinmann was making the bids or offers on behalf of accounts that he traded; and/or (iv) intentionally or recklessly engaging, or attempting to engage, in acts, practices, or a course of business which operated or would operate

as a fraud or deceit upon other persons in violation of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1)

and Regulation 180.1(a)(1)-(3), 17 C.F.R. § 180.1(a)(1)-(3) (2021).

45.     By the conduct described in paragraphs 1 through 41 above, Defendant Weinmann

cheated or defrauded, or attempted to cheat or defraud, willfully made or caused to be made false

reports and statements to, and willfully deceived, or attempted to deceive, Coquest's customers in

connection with orders for or on behalf of other persons to make contracts of sale of commodities

for future delivery subject to the rules of a designated contract market by, in connection with orders

for or on behalf of other persons to make contracts of sale of commodities for future delivery

subject to the rules of a designated contract market:  (i) intentionally or recklessly trading on the

basis of material, nonpublic information in breach of a pre-existing duty owed to Coquest

customers; (ii) intentionally or recklessly trading against Coquest customers at prices less

favorable than he knew or should have known to be available in the market in order to benefit

Buttonwood and Weva at the Coquest customers' expense; (iii) intentionally or recklessly

deceiving or attempting to deceive customers into believing that he was reporting bids and offers

made by some third party trading counterparty when in fact Weinmann was making the bids or

offers on behalf of accounts that he traded; and/or (iv) intentionally or recklessly cheating,

defrauding, attempting to cheat or defraud, deceiving, and attempting to deceive other persons in

regard to their orders or executions of orders or in regard to the acts of agency performed for the

other persons in violation of Section 4b(a)(1)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(1)(A)-(C).

46.     By the conduct described in paragraphs 1 through 41 above, Defendants Weinmann

and Vassallo failed to diligently supervise the handling of commodity interest accounts and

activities relating to Coquest and Buttonwood's business as a Commission registrant by: (i) failing

to establish, implement, and enforce policies or procedures to detect and prevent Weinmann and

Vassallo's misuse of confidential customer information; (ii) failing to review Weinmann's trading on behalf of Buttonwood and Weva to determine whether it conflicted with his brokerage services he provided to Coquest customers; and (iii) failing to establish, implement, or enforce policies or procedures governing its brokers' handling of customer orders and the protection of confidential customer information in violation of Regulation 166.3, 17 C.F.R. § 166.3 (2021).

47.     The foregoing acts, omissions, and failures of Weinmann and Vassallo occurred within the scope of their employment, office, or agency with Coquest, Buttonwood, and Weva; therefore, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2 (2021), Coquest, Buttonwood, and Weva are liable for Weinmann and Vassallo's acts, omissions, and failures in violation of 7 U.S.C. §§ 9(1) and 6b(a)(1)(A)-(C), and 17 C.F.R. §§ 155.4(b)(2)(i), 180.1(a)(1)-(3), and 166.3.

48.     Unless restrained and enjoined by this Court, there is a reasonable likelihood that Defendants will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act and Regulations.

## IV.     PERMANENT INJUNCTION

### IT IS HEREBY ORDERED THAT:

49.     Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, all Defendants are permanently restrained, enjoined and prohibited from directly or indirectly:

a.      Knowingly taking the other side of any order of another person revealed to an introducing broker or any of its affiliated persons by reason of their relationship to such other person, except with such other person's prior consent in violation of Regulation 155.4(b)(2)(i), 17 C.F.R. § 155.4(b)(2)(i) (2021).

50.     Additionally, based upon and in connection with the foregoing conduct, pursuant to 7 U.S.C. § 13a-1, Defendants Coquest, Buttonwood, Weva, and Weinmann are permanently restrained, enjoined and prohibited from directly or indirectly:

a.     Using or employing, or attempting to use or employ, in connection with any contract of sale of any commodity for future delivery on or subject to the rules of any registered entity, any manipulative or deceptive device or contrivance in violation of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1);

b.     Intentionally or recklessly engaging or attempting to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person in connection with any contract for future delivery on or subject to the rules of any registered entity in violation of Regulation 180.1(a)(1)-(3), 17 C.F.R. § 180.1(a)(1)-(3) (2021);

c.     Cheating or defrauding, or attempting to cheat or defraud, willfully making or causing to be made false reports and statements to, and willfully deceiving, or attempting to deceive, other persons in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery subject to the rules of a designated contract market that is made, or to be made, for or on behalf of, or with, any other person in violation of Section 4b(a)(1)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(1)(A)-(C);

51.     Additionally, based upon and in connection with the foregoing conduct, pursuant to 7 U.S.C. § 13a-1, Defendants Coquest, Buttonwood, Weinmann, and Vassallo are permanently restrained, enjoined and prohibited from directly or indirectly:

a.      Failing to diligently supervise the handling by their partners, officers, employees, and agents of all commodity interest accounts carried, operated, advised, or introduced by these Defendants and all other activities of their partners, officers, employees, and agents relating to these Defendants' business as Commission registrants in violation of Regulation 166.3, 17 C.F.R. § 166.3 (2021).

52.      With the exception set forth in subparagraph 51(h)below, Defendant Weinmann is also restrained, enjoined and prohibited for a period of six months from directly or indirectly:

a.      Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40));

b.      Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2021)), for his own personal account or for any account in which he has a direct or indirect interest;

c.      Other than for commodity trading interests traded by Buttonwood, having any commodity interests traded on his behalf;

d.      Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

e.      Soliciting, receiving or accepting any orders or funds from any person for the purpose of purchasing or selling any commodity interests, soliciting any discretionary accounts, or supervising any person or persons so engaged;

f.      Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such

registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2021); and/or

g.      Other than for Defendants Coquest and Buttonwood, acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2021)), agent or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38)), registered, exempted from registration or required to be registered with the Commission except as provided for in 17 C.F.R. § 4.14(a)(9);

h.      Notwithstanding the foregoing, throughout the six-month period Defendant Weinmann may assist in the liquidation of pre-existing positions that were held by Buttonwood, LLC at the commencement of the six month period, so long as the liquidation trades are not brokered by Coquest, Inc.

53.      In addition to the restraints, injunctions and prohibitions in subparagraph 51 above, Defendants Coquest and Weinmann are further restrained, enjoined and prohibited from directly or indirectly brokering block trades on behalf of any other person for a period of two years.

## V.      RESTITUTION, DISGORGEMENT, AND CIVIL MONETARY PENALTY

### A.      Disgorgement

54.      Defendants shall pay, jointly and severally, disgorgement in the amount of four hundred ninety-six thousand and twenty-one dollars ($496,021) ("Disgorgement Obligation"), representing the gains received in connection with such violations. The Disgorgement Obligation will be offset by the amount paid to the CME Group (or any of its subsidiary exchanges) in satisfaction of the disgorgement order in the disciplinary action against the Defendants captioned NYMEX 17-0744-BC. Defendants shall provide the CFTC proof of any payment of disgorgement to the CME Group (or any of its subsidiary exchanges), including the case name and number in

connection with which such payment has been made, and the amount by which the Disgorgement

Obligation is to be reduced, within 10 days of the entry of this Consent Order. If the Disgorgement

Obligation is not paid in full immediately, then post-judgment interest shall accrue on the unpaid

portion of the Disgorgement Obligation beginning on the date of entry of this Consent Order and

shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent

Order pursuant to 28 U.S.C. § 1961.

  55. Defendants shall pay their Disgorgement Obligation and any post-judgment interest

by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or

bank money order. If payment is to be made other than by electronic funds transfer, then the

payment shall be made payable to the Commodity Futures Trading Commission and sent to the

address below:

> MMAC/ESC/AMK326
> Commodity Futures Trading Commission
> 6500 S. MacArthur Blvd.
> HQ Room 266
> Oklahoma City, OK 73169
> 9-amz-ar-cftc@faa.gov

If payment by electronic funds transfer is chosen, Defendants shall contact Tonia King or her

successor at the address above to receive payment instructions and shall fully comply with those

instructions. Defendants shall accompany payment of the Disgorgement Obligation with a cover

letter that identifies Defendants and the name and docket number of this proceeding. Defendants

shall simultaneously transmit copies of the cover letter and the form of payment to the Chief

Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st

Street, NW, Washington, D.C. 20581.

**B.     Civil Monetary Penalty**

56.     Defendants shall pay, jointly and severally, a civil monetary penalty in the amount of two million five hundred thousand ($2,500,000) ("CMP Obligation"). The CMP Obligation shall be payable as follows: one third of the CMP Obligation ($833,333.33) is due within 30 days after the entry of the Consent Order; and additional third of the CMP Obligation ($833,333.33) is due within 60 days after the entry of the Consent Order; and the final third of the CMP Obligation ($833,333.34) is due within 90 days after entry of the Consent Order. If the CMP Obligation is not paid in full immediately within 90 days after the entry of this Consent Order, then post-judgment interest shall accrue on the unpaid portion of the CMP Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961.

57.     Defendants shall pay their CMP Obligation and any post-judgment interest, by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> MMAC/ESC/AMK326
> Commodity Futures Trading Commission
> 6500 S. MacArthur Blvd.
> HQ Room 266
> Oklahoma City, OK 73169
> 9-amz-ar-cftc@faa.gov

If payment by electronic funds transfer is chosen, Defendants shall contact Tonia King or her successor at the address above to receive payment instructions and shall fully comply with those instructions. Defendants shall accompany payment of the CMP Obligation with a cover letter that identifies Defendants and the name and docket number of this proceeding. Defendants shall

18

simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

**C.     Provisions Related to Monetary Sanctions**

58.     Partial Satisfaction:   Acceptance by the CFTC or the Monitor of any partial payment of Defendants Restitution Obligation, Disgorgement Obligation, or CMP Obligation shall not be deemed a waiver of their obligation to make further payments pursuant to this Consent Order, or a waiver of the CFTC's right to seek to compel payment of any remaining balance.

**D.     Cooperation**

59.     Defendants shall cooperate fully and expeditiously with the CFTC, including the CFTC's Division of Enforcement, in this action, and in any current or future CFTC investigation or action related thereto.   Defendants shall also cooperate in any investigation, civil litigation, or administrative matter related to, or arising from, this action.   As part of such cooperation, Defendants Buttonwood and Weinmann agree to:

A. Within ten days of the entry of this Consent Order, send the CFTC a report of all positions held by Buttonwood, LLC as of the date that this Consent Order is entered;

B. On a monthly basis during the pendency of the six-month period described in paragraph 51, above, provide the CFTC with a report of all trades, including identification of the trader for each trade, made on behalf of Buttonwood LLC; and

C. At the conclusion of the six-month period described in paragraph 51, certify to the Commission that Weinmann complied with the restrictions described in paragraph 51, above.

## VI.   MISCELLANEOUS PROVISIONS

60.   Until such time as Defendants satisfy in full their CMP and disgorgement obligations under this Consent Order, upon the commencement by or against Defendants of insolvency, receivership or bankruptcy proceedings or any other proceedings for the settlement of Defendants' debts, all notices to creditors required to be furnished to the Commission under Title 11 of the United States Code or other applicable law with respect to such insolvency, receivership bankruptcy or other proceedings, shall be sent to the address below:

> Secretary of the Commission
> Legal Division
> Commodity Futures Trading Commission
> Three Lafayette Centre
> 1155 21st Street N.W.
> Washington, DC 20581

61.   Notice:  All notices required to be given by any provision in this Consent Order, except as set forth in paragraph 59, above, shall be sent certified mail, return receipt requested, as follows:

Notice to CFTC:

> Robert Howell
> Deputy Director
> 77 W Jackson Blvd; Suite 800
> Chicago, IL 60604

Notice to Defendants:

> Aitan Goelman
> Zuckerman Spaeder LLP
> 1800 M Street, NW, Suite 1000
> Washington, DC 20036
> agoelman@zuckerman.com

All such notices to the CFTC shall reference the name and docket number of this action.

62.     Change of Address/Phone:   Until such time as Defendants satisfy in full their Restitution Obligation, Disgorgement Obligation, and CMP Obligation as set forth in this Consent Order, Defendants shall provide written notice to the Commission by certified mail of any change to their telephone number and mailing address within ten calendar days of the change.

63.     Entire Agreement and Amendments:   This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date.   Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless:  (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

64.     Invalidation:   If any provision of this Consent Order or if the application of any provision or circumstance is held invalid, then the remainder of this Consent Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

65.     Waiver:   The failure of any party to this Consent Order at any time to require performance of any provision of this Consent Order shall in no manner affect the right of the party at a later time to enforce the same or any other provision of this Consent Order.   No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

66.     Continuing Jurisdiction of this Court:   This Court shall retain jurisdiction of this action to ensure compliance with this Consent Order and for all other purposes related to this action, including any motion by Defendants to modify or for relief from the terms of this Consent Order.

21

67. Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Consent Order shall be binding upon the following persons who receive actual notice of this Consent Order, by personal service or otherwise: (1) Defendants; (2) any officer, agent, servant, employee, or attorney of the Defendants; and (3) any other persons who are in active concert or participation with any persons described in subsections (1) and (2) above.

68. Authority: John Vassallo hereby warrants that he is Partner at Coquest Inc., Buttonwood LLC, and Weva Properties Ltd., and that this Consent Order has been duly authorized by Coquest Inc., Buttonwood LLC, and Weva Properties Ltd. and he has been duly empowered to sign and submit this Consent Order on behalf of Coquest Inc., Buttonwood LLC, and Weva Properties Ltd.

69. Counterparts and Facsimile Execution: This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart. Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

70. Contempt: Defendants understand that the terms of the Consent Order, except with respect to disgorgement or restitution, are enforceable through contempt proceedings, and that, in any such proceedings they may not challenge the validity of this Consent Order.

71. Agreements and Undertakings: Defendants shall comply with all of the undertakings and agreements set forth in this Consent Order.

There being no just reason for delay, the Clerk of the Court is hereby ordered to enter this *Consent Order for Permanent Injunction, Civil Monetary Penalty, and Other Equitable Relief Against Coquest Inc., Buttonwood LLC, Weva Properties Ltd., Dennis Weinmann, and John Vassallo* forthwith and without further notice.

**IT IS SO ORDERED** on this _____ day of _____, 2023.

_____
UNITED STATES DISTRICT JUDGE

CONSENTED TO AND APPROVED BY:

_John Vassallo_
John Vassallo
Partner of Coquest Inc.

Date: 1-30-2023

_John Vassallo_
John Vassallo
Partner of Buttonwood LLC

Date: 1-30-2023

_John Vassallo_
John Vassallo
Partner of Weva Properties Ltd.

Date: 1-30-2023

_Dennis Weinmann_
Dennis Weinmann, individually

Date: 1/31/23

_John Vassallo_
John Vassallo, individually

Date: 1-30-2023


Approved as to form:

_Aitan Goelman_
Aitan Goelman
Mark J. Feaster

Attorneys for all Defendants
Zuckerman Spaeder LLP
1800 M Street, NW, Suite 1000

Douglas G. Snodgrass
Nina Ruvinsky
David A. Terrell

Attorneys for
Commodity Futures Trading Commission
525 W. Monroe Street, Suite 1100
Chicago, IL 60661
Telephone:  (312) 596-0700
Facsimile:  (312) 596-0714
E-mail:  dsnodgrass@cftc.gov
nruvinsky@cftc.gov
dterrell@cftc.gov

Date _____

24

Washington, DC 20036
Telephone: (202) 778-1800
E-mail:        agoelman@zuckerman.com
               mfeaster@zuckerman.com

CONSENTED TO AND APPROVED BY:

_____
**John Vassallo**
**Partner of Coquest Inc.**

Date: _____

_____
**John Vassallo**
**Partner of Buttonwood LLC**

Date: _____

_____
**John Vassallo**
**Partner of Weva Properties Ltd.**

Date: _____

_____
Dennis Weinmann, individually

Date: _____

_____
John Vassallo, individually

Date: _____

Approved as to form:

_____
Aitan Goelman
Mark J. Feaster

Attorneys for all Defendants
Zuckerman Spaeder LLP
1800 M Street, NW, Suite 1000

_____
Douglas G. Snodgrass
Nina Ruvinsky
David A. Terrell

Attorneys for
Commodity Futures Trading Commission
77 W. Jackson Blvd. Suite 800
Chicago, IL 60604
Telephone:  (312) 596-0700
Facsimile:  (312) 596-0714
E-mail:      dsnodgrass@cftc.gov
             nruvinsky@cftc.gov
             dterrell@cftc.gov

Date   3/2/2023

24